**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 18, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP431**

Cir. Ct. No. **2021CV152**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

WISCONSIN STATE LEGISLATURE,

  PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

ADAM JARCHOW,

  PLAINTIFF-CO-APPELLANT-CROSS-RESPONDENT,

 V.

JOSH KAUL AND KATHY KOLTIN BLUMENFELD,

  DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Polk County:  JEFFERY L. ANDERSON, Judge. *Reversed in part, affirmed in part and cause remanded with directions; cross-appeal affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

¶1 LAZAR, J. The Wisconsin State Legislature and Adam Jarchow[1] appeal that part of the circuit court's summary judgment order holding that WIS. STAT. § 165.10 (2021-22)[2] does not require the attorney general to deposit settlement funds into the general fund for general purpose revenues and that such funds can be deposited, outside the ambit of the legislature's authority, into other accounts including those established under WIS. STAT. § 20.455(3)(g) and (1)(gh). This, the Legislature asserts, contravenes the relatively recent revision to the statutes by § 27 of 2017 Wis. Act 369 (the "Act"). Respondents and cross-appellants Attorney General Josh Kaul and Secretary of the Department of Administration (DOA) Kathy Koltin Blumenfeld[3] counter that the plain language of the new statute says "general fund" not "general purpose revenue fund" and that the circuit court issued the appropriate declaration. The Attorney General also asserts that the Legislature and Jarchow lack standing to challenge his interpretation of the statute.

¶2 In his cross-appeal, the Attorney General asserts that the circuit court erred in holding that the Wisconsin Department of Justice (DOJ) prosecutes a civil

---

[1] Jarchow is a Wisconsin resident and taxpayer. His arguments on the merits are identical to the Legislature's, so we collectively refer to these parties as "the Legislature" except in our discussion of standing (where Jarchow is differently situated from the Legislature). When referring to the legislative body generally and not in its capacity as party to this action, the term "legislature" shall not be capitalized.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[3] Joel Brennan, the Secretary of the DOA when this litigation was filed, was initially named as a party defendant. Koltin Blumenfeld is the current DOA Secretary. Both officials were named in their official capacity as office-holders. Because their arguments are identical, the Attorney General and DOA Secretary will be referred to collectively as "the Attorney General." When referring to the role of the attorney general not as a party to this action, the term "attorney general" shall not be capitalized. For purposes of this opinion, the Attorney General shall be referred to in masculine pronouns to reflect the current office-holder.

action for purposes of WIS. STAT. § 165.08(1) (as amended by § 26 of the Act) when it simultaneously files a civil action and a stipulated consent decree seeking a court judgment on that decree. He contends that this is merely a form of pre-suit negotiation with a civil enforcement target and is not subject to the statute. The Legislature supports the circuit court's order.

¶3 We conclude as a preliminary matter that the Legislature and Jarchow have standing. Next, based upon the plain language of WIS. STAT. § 165.10, taken together with the scope, context, and intent of that statute and related statutes, we conclude that the circuit court erred in holding that the attorney general could deposit relevant settlement funds not into the general fund but into other accounts over which the DOJ maintains sole discretion for expenditures. Finally, with respect to the cross-appeal, we conclude that the circuit court appropriately granted summary judgment declaring that there is a clear differentiation between pre-suit negotiations and the filing of a lawsuit in court because the act of filing a lawsuit (albeit with a simultaneous proposed consent decree) still constitutes the commencement, prosecution, and compromise of a civil action.[4]

---

[4] In a separate but related appeal, this court has issued an opinion holding that WIS. STAT. § 165.08(1) is constitutional. *See* **Kaul v. Wisconsin State Legislature**, No. 2022AP790, slip op. recommended for publication (WI App Dec. 2, 2024). Accordingly, the cross-appeal has not been rendered moot or superseded by another opinion of this court.

## BACKGROUND

¶4    "A government of diffused powers, [the founders] knew, is a government less capable of invading the liberties of the people." *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J., concurring) ("'No political truth is ... stamped with the authority of more enlightened patrons of liberty' than the separation of powers." (quoting The Federalist No. 47, at 301 (James Madison) (Clinton Rossiter ed., 1961))).  The Wisconsin Constitution sets out the three separate branches of government, each with its own zone of authority and each bound to comply with certain checks and balances.  *See Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶3, 376 Wis. 2d 147, 897 N.W.2d 384 (The "tripartite separation of independent governmental power remains the bedrock of the structure by which we secure liberty in both Wisconsin and the United States."); *see also Service Emps. Int'l Union, Local 1 v. Vos*, 2020 WI 67, ¶31, 393 Wis. 2d 38, 946 N.W.2d 35 (*SEIU*) (noting that each of the three separate branches is "'vested' with a specific core government power").

¶5    No one branch—or official—stands above the others with unfettered authority to act as it or they please.  *SEIU*, 393 Wis. 2d 38, ¶33 ("The Wisconsin constitution creates three separate co-ordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another." (quoting *State v. Holmes*, 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982))).

¶6 The drafters of the Wisconsin Constitution established certain constitutional officers[5] and specific departments, one of which is the attorney general, WIS. CONST. art. VI, § 3, who sits atop the Wisconsin DOJ. *Planned Parenthood of Wis., Inc. v. Kaul*, 384 F. Supp. 3d 982, 989 (W.D. Wis. 2019); WIS. STAT. § 165.25. Wisconsin attorneys general have "no common-law powers or duties"; rather, their "duties spring from … statute." *State v. Industrial Comm'n*, 172 Wis. 415, 417, 179 N.W. 579 (1920). "This is because the Wisconsin Constitution removed all of the attorney general's 'powers and duties which were found in that office under common law.'" *State v. City of Oak Creek*, 2000 WI 9, ¶22, 232 Wis. 2d 612, 605 N.W.2d 526 (quoting *Flatley v. State*, 63 Wis. 2d 254, 261, 217 N.W.2d 258 (1974)). The office of the attorney general was, accordingly, given statutory authority and duties as described in § 165.25.

¶7 As part of the attorney general's authority, he is allowed to compromise and settle certain litigation on behalf of "any state department, or any state officer, employee, or agent of the department in any civil action or other matter … on account of any act growing out of or committed in the lawful course of an officer's, employee's, or agent's duties." WIS. STAT. § 165.25(6)(a)1. In the course of exercising that litigation settlement authority, the attorney general may receive settlement funds ranging from a few thousand dollars to millions of dollars.

¶8 Previously, with 2017 Wis. Act 59, § 1672G, the legislature limited the attorney general's authority over settlement funds that are "not committed

---

[5] *See* WIS. CONST. art. V (the governor and lieutenant governor), art. VI (secretary of state, treasurer, attorney general, sheriffs, coroners, register of deeds, and district attorneys), art. IV (the legislature), and art. VII (the judiciary).

under the terms of the settlement" in an earlier version of WIS. STAT. § 165.10 as follows:

> [B]efore the attorney general may expend settlement funds under s. 20.455(3)(g) that are not committed under the terms of the settlement, the attorney general shall submit to the joint committee on finance a proposed plan for the expenditure of the funds.

So, once a lawsuit was settled, the attorney general was legally bound to seek approval of the Joint Finance Committee before "uncommitted" settlement funds could be spent by his office.

¶9    In December 2018, the Legislature enacted § 27 of 2017 Wis. Act 369, which sought to reclaim the Legislature's exclusive constitutional authority to direct the spending of *all* settlement funds with a new (much shorter and much more direct) statute that provides:  "The attorney general shall deposit all settlement funds into the general fund."  WIS. STAT. § 165.10.[6]  When read in conjunction with WIS. STAT. § 20.906(1), which provides that "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general

---

[6] The Wisconsin Legislative Council Act Memo for the Act (Dec. 17, 2018), available at docs.legis.wisconsin.gov/2017/related/lcactmemo/act369.pdf, explains how the new legislation was intended to change existing law:

> **Use of Settlement Funds**
>
> Under **prior law**, the attorney general was required to submit to [Joint Committee on Finance] for 14-day passive review a proposed plan for the expenditure of settlement funds that are not committed under the terms of the settlement.
>
> **The act** requires the attorney general to deposit all settlement funds into the general fund. The act also lapses all unencumbered settlement funds that are currently in the DOJ appropriation into the general fund.

fund unless otherwise specifically provided by law," the statute confirms the Legislature's control over all DOJ settlement funds. *See* Bob Lang & Sandy Swain, *State Budget Process*, Wisconsin Legis. Fiscal Bureau, Informational Paper No. 73, 27 (Jan. 2017) (explaining that general purpose revenue is "available for appropriation by the Legislature for any purpose").[7]

¶10 Nevertheless, the current attorney general avoided Joint Finance Committee approval via two avenues. First, without pre-approval, he continued the past practice of depositing settlement funds into an account designated under WIS. STAT. § 20.455(3)(g) (for "gifts, grants, and proceeds") to "receive and allocate settlement funds that are distributed at [the attorney general's] sole discretion." In order to do so, he included specific language in the DOJ's settlement agreements stating that settlement funds were to be committed under the terms of the settlement to "[Consumer Protection], Discretionary, and Cost Recovery" categories and placed into the fund where the Attorney General, at his convenience, could reassign them and use them at his sole discretion.

¶11 Second, he continued the past practice of depositing portions of the settlements as "cost-recovery" into an account under WIS. STAT. § 20.455(1)(gh), which he could spend at his discretion. These cost-recovery amounts were significant—amounting to hundreds of thousands of dollars for some cases. By utilizing these two mechanisms, the Attorney General was able to settle major

---

[7] Available at https://docs.legis.wisconsin.gov/misc/lfb/informational_papers/january_2017/0073_state_budget_process_informational_paper_73.pdf.

lawsuits involving significant sums of money and then deposit the settlement funds into accounts that he alone controlled.[8]

¶12    Other sections of the Act also evidence the legislature's apparent intent to corral the attorney general's discretion with respect to the use of settlement funds.  Section 21 amended WIS. STAT. § 20.455(3)(g) to limit the attorney general's spending authority in that account to the "$98,300 annually" "credited to" that account.  In addition, Section 103 "lapsed to the general fund the unencumbered balance of any settlement funds" in § 20.455(3)(g).[9]    Finally, Section 26 amended WIS. STAT. § 165.08(1) to read:

> Any civil action prosecuted by the department by direction of any officer, department, board, or commission, or any civil action prosecuted by the department on the initiative of the attorney general, or at the request of any individual may be compromised or discontinued with the approval of an intervenor under s. 803.09(2m) or, if there is no intervenor, by submission of a proposed plan to the joint committee on finance for the approval of the committee. The compromise or discontinuance may occur only if the joint committee on finance approves the proposed plan. No proposed plan may be submitted to the joint committee on finance if the plan concedes the unconstitutionality or other invalidity of a statute, facially or as applied, or concedes that a statute violates or is preempted by federal law, without the approval of the joint committee on legislative organization.

Despite the latter provision, the Attorney General failed to seek approval from the Joint Finance Committee in matters in which DOJ filed complaints with proposed

---

[8] There is no allegation that the Attorney General was violating the prior statute; the allegations are only that he continued to act as if that statute were still in effect.

[9] By January 2019, when 2017 Wisconsin Act 369 became effective, there were no unencumbered funds in the WIS. STAT. § 20.455(3)(g) account.

consent decrees, asserting that no civil actions were being prosecuted or compromised.

¶13    In June 2019, the Joint Finance Committee Chairs wrote to the Attorney General noting potential violations of the Act, including WIS. STAT. § 165.10.    They asserted that the Attorney General had not deposited *any* settlement funds into the general fund for general purpose revenues.  In a written reply, the Attorney General asserted the new legislation only applied in a limited manner, similar to the previous statute, and that he, therefore, was not in violation. The parties then engaged in a letter-writing battle in which neither side was prepared to compromise (much less agree) that culminated in the Legislature filing the underlying lawsuit on June 3, 2021, seeking declaratory judgment, injunctive relief, and mandamus relief against the Attorney General.[10]

¶14    On March 11, 2022, the circuit court granted in part and denied in part cross-motions for summary judgment.  First, the court denied the Attorney General's motion to dismiss by concluding that standing existed:

> [T]here seems to be a pecuniary loss.  Alternatively, in terms of the pecuniary loss, there's an excess of 30 million sitting in a clearing account that's being held pending the outcome of legislation [sic].  The Court is aware, there, when we look at that, that money is at least expended in order to audit that, and that's also a strange place for that amount of money to be sitting and it has been growing, pending, in this case, litigation in order to determine an outcome.
>
> That money sitting also isn't being potentially expended … which would benefit a taxpayer in terms of pecuniary

---

[10] The Legislature initially brought an original action before our state supreme court, which that court declined.  *See* Petition for Original Action, **Vos v. Kaul**, No. 2019AP1389-OA (Aug. 1, 2019); Order, **Vos**, No. 2019AP1389-OA (Sept. 22, 2020).

loss. Or in other words, the Court initially looking at this found that there was a pecuniary loss that allows for taxpayer standing and for the legislature to proceed.

¶15 Next, with respect to WIS. STAT. § 165.08(1), the circuit court considered the plain language of the statutory text and dictionary definitions of "civil action," "prosecute," "compromise," and "discontinuance" and held in favor of the Legislature, reaching the following conclusions of law:

> By filing a lawsuit in a court of law and then obtaining a judicial resolution of that lawsuit pursuant to a consent decree, the attorney general has clearly prosecuted that lawsuit by commencing and carrying out a legal action to completion. Therefore, pursuant to Section 26, he must first obtain legislative approval before seeking to compromise that action through a consent decree. Citing: Wisconsin Statute Section 165.08(1).

¶16 Finally, the circuit court granted part of the Legislature's motion and issued a declaration that was partially in its favor with respect to WIS. STAT. § 165.10. Carving out the issue of attorney's fees, the court held that "settlement funds need to be paid to the general fund. That's plain. That's clear." The court granted declaratory judgment on that point. But then the court distinguished between the "general fund" and the "general purpose revenue" fund and allowed the Attorney General to continue to deposit settlement funds into the WIS. STAT. § 20.455(3)(g) account:

> All settlement funds go to the general fund. I agree. I can grant, in this case, the request of plaintiffs, and that's what I am getting at with regard to the plaintiffs' cause of action, is that they have asked for declaratory judgment that it means what it means. Pay to the general fund. I can grant that declaratory judgment because it says go to the general fund. It's clear.
>
> I understand that they want me to say not only does it go to the general fund, but it goes to the general purposes

revenue. But that's reading the term general purposes revenue into 165.10. It does not say that. It states plainly: Pay it, the settlement funds, into the general fund.[11]

¶17 The circuit court issued a written order on March 14, 2022, memorializing its rulings. All parties appealed.[12]

## STANDARD OF REVIEW

¶18 We review a circuit court's "summary judgment decisions de novo, applying the same method employed by the [circuit] court." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶2, 275 Wis. 2d 397, 685 N.W.2d 853. "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995); WIS. STAT. § 802.08(2). "As here, when both sides have filed cross-motions for summary judgment, the parties concede there are no issues of material fact, waive trial, and stipulate to the court's resolution of the legal issues." *Zurich Am. Ins. Co. v. Wisconsin Physicians Servs. Ins. Corp.*, 2007 WI App 259, ¶10, 306 Wis. 2d 617, 743 N.W.2d 710.

---

[11] The circuit court also determined that the Legislature had not fully pled or briefed that the declaration it sought covered whether putting settlement funds into the WIS. STAT. § 20.455(3)(g) fund was contrary to the new legislation. The Legislature pointed directly to language in the complaint to no avail. The court refused to further rule on that point. We conclude that the issue was sufficiently raised in the briefs and addressed in the oral argument before this court.

[12] This court determined that the Legislature's Notice of Appeal to the District II Court of Appeals was filed before the Attorney General's Notice of Appeal to District IV or Jarchow's Notice of Appeal to District II. Thus, District II is the proper venue for this appeal pursuant to WIS. STAT. § 752.21(2).

¶19 In this appeal, the summary judgment motions focus upon the interpretation of a statute. As with summary judgment in general, "[q]uestions of statutory interpretation are questions of law that we review independently." *State v. Mercado*, 2021 WI 2, ¶32, 395 Wis. 2d 296, 953 N.W.2d 337. Even with this de novo review, we may "benefit from the analyses of the circuit court." *Waity v. LeMahieu*, 2022 WI 6, ¶18, 400 Wis. 2d 356, 969 N.W.2d 263 (quoting *Estate of Miller v. Storey*, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759). This court, however, may still conduct its statutory interpretation "without deference to the [circuit] court's decision." *Murr v. St. Croix Cnty. Bd. of Adjustment*, 2011 WI App 29, ¶9, 332 Wis. 2d 172, 796 N.W.2d 837.

¶20 Finally, "[w]hether a party has standing presents a question of law that we also review de novo." *Krier v. Vilione*, 2009 WI 45, ¶14, 317 Wis. 2d 288, 766 N.W.2d 517; *Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶14, 300 Wis. 2d 290, 731 N.W.2d 240.

## DISCUSSION

¶21 The Legislature asks whether "all settlement funds" means *all settlement funds* and whether the "general fund" means the *general fund* as previously statutorily defined. Despite legislation expressly designed to bring all settlement funds under legislative control and despite the simple and plain language of that legislation, the Attorney General has continued to act precisely in the manner which the Legislature sought to end. The definition of "prosecute" is similarly clear and plain, yet, again, the Attorney General seeks a tortured definitional ruling from this court.

¶22 Whether or not the prior statute dealing with uncommitted settlement funds contained any wiggle room (something not at issue here), it would be

12

unreasonable to conclude the new statutes are not plain on their face and do not expressly prohibit the conduct that the Attorney General seeks to use to avoid legislative oversight. This court has not been called upon to interpret vague and incomprehensible language; it is asked to define simple terms set out in a straightforward manner. Moreover, not only are the terms plain and clear, the statutes were enacted to change DOJ practices. Legislative intent could not be more plain.

### I.     Both the Legislature and Jarchow have standing.

¶23     The Attorney General bases his contention that the Legislature lacks standing to pursue this action upon several grounds. All of his arguments show a failure to appreciate that standing in Wisconsin is "permissive, policy-oriented," and "limited only by prudential considerations." *Teigen v. WEC*, 2022 WI 64, ¶¶14, 16, 403 Wis. 2d 607, 976 N.W.2d 519, *overruled on other grounds by Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429. None of the Attorney General's standing arguments prevail.

¶24     First, pursuant to *American Medical Services, Inc. v. Mutual Federal Savings & Loan Ass'n*, 52 Wis. 2d 198, 203, 188 N.W.2d 529 (1971), the Attorney General argues that the Legislature cannot seek an advisory statutory-interpretation opinion of a budget statute that it has enacted. This argument is inapt. In *American Medical Services*, our state supreme court held that "[a]dvisory opinions should not be given under the guise of a declaration of rights." *Id.* at 203. But the Legislature is not seeking an advisory opinion here; it is seeking a declaration that a member of another branch of government is infringing on its legislative powers. As it had standing in *Wisconsin Legislature v. Palm*, 2020 WI 42, ¶13, 391 Wis. 2d 497, 942 N.W.2d 900, where our supreme

court stated that legislators "had standing to sue when, as legislators, they claimed that a member of the executive branch invaded the Legislature's core powers," the Legislature has standing to sue here.

¶25 Next, relying upon federal authority from the Third Circuit, the Attorney General contends that merely because another governmental entity has (in the Legislature's view) erroneously interpreted a statute does not create an injury-in-fact sufficient to afford standing. *See **Russell v. DeJongh***, 491 F.3d 130, 134 (3rd Cir. 2007). This court rejects that argument. While we may look to federal case law as persuasive authority on standing, "[f]ederal law on standing is not binding in Wisconsin." ***Friends of Black River Forest v. Kohler Co.***, 2022 WI 52, ¶¶12-17, 402 Wis. 2d 587, 977 N.W.2d 342. That is especially true here where a Wisconsin Supreme Court case is on point and supports the circuit court's decision that the Legislature has standing to pursue this matter. *See **Palm***, 391 Wis. 2d 497, ¶13.

¶26 The Attorney General's last two arguments with respect to the Legislature's standing are that the Legislature does not have "core constitutional authority to appropriate funds *out* of the treasury" and that if the Legislature's standing rationale is extended, separation of powers principles could be violated because the Legislature could usurp the core executive power of enforcing the law. These arguments are unpersuasive. Pursuant to article VIII, section 2 of the Wisconsin Constitution, "[n]o money shall be paid out of the treasury except in pursuance of an appropriation by law." And the Legislature "is the branch granted the power to enact laws." ***SEIU***, 393 Wis. 2d 38, ¶68. *A priori*, the Legislature has the power of the purse, and that must necessarily include money coming into the state treasury; only state funds can be appropriated. ***Id.***, ¶69. Moreover, at no point has the Legislature contended that it seeks to encroach into the executive's

zone of authority or its ability to sue. The Legislature has simply filed an action seeking a declaration over where the state's money may be deposited. To presume ulterior motives and speculate as to future inappropriate conduct is not a legal basis upon which to defeat standing.

¶27 We turn to Jarchow. The Attorney General asserts that, pursuant to *Fabick v. Evers*, 2021 WI 28, ¶¶10-11, 396 Wis. 2d 231, 956 N.W.2d 856, Jarchow lacks taxpayer standing because Jarchow is not asserting "illegal expenditure of taxpayer funds" and he has not sustained, nor will he sustain, some pecuniary loss. Jarchow's allegations, the Attorney General contends, are mere conjecture.

¶28 But *Fabick* actually supports the conclusion that Jarchow has standing. As a taxpayer, Jarchow is permitted to challenge any "governmental actions leading to an illegal expenditure of taxpayer funds," so long as he can show "some pecuniary loss" in the form of the government's allegedly unlawful expenditure. *Id.*, ¶¶10-11 & n.5. That loss may be "infinitesimally small." *Hart v. Ament*, 176 Wis. 2d 694, 699, 500 N.W.2d 312 (1993). In this appeal, the amount at issue may reach millions of dollars.[13] Jarchow need not show that, but for the allegedly illegal actions of the Attorney General, no expenditures would be made or even that the amounts spent would be different without the unlawful conduct. *See Fabick*, 396 Wis. 2d 231, ¶¶10-11 & n.5. It is "the amount to be expended under the [allegedly unlawful conduct] that controls, not the difference between that amount and the amount that would be expended" if the conduct had

---

[13] All parties acknowledge that DOJ's settlements can include recoveries that top one million dollars for a single case.

not occurred. ***Democrat Printing Co. v. Zimmerman***, 245 Wis. 406, 410, 14 N.W.2d 428 (1944).

¶29     Accordingly, we uphold the circuit court's holding on standing as to both the Legislature and Jarchow. This court will now address the merits of the issues on appeal.

### II.     The Act altered the accounts into which the Attorney General may deposit settlement funds.

¶30     We have a "solemn obligation ... to faithfully give effect to the laws enacted by the legislature." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. In conducting statutory interpretation, we first look to the language of the statute "because we assume that the legislature's intent is expressed in the words it used."[14] ***Orion Flight Servs., Inc. v. Basler Flight Serv.***, 2006 WI 51, ¶16, 290 Wis. 2d 421, 714 N.W.2d 130 (quoting ***State v. Reed***, 2005 WI 53, ¶13, 280 Wis. 2d 68, 695 N.W.2d 315). It is not this court's role to impose its personal preferences when it interprets words inscribed by the legislature. ***Columbus Park Hous. Corp. v. City of Kenosha***, 2003 WI 143, ¶34, 267 Wis. 2d 59, 671 N.W.2d 633; *see also* ***Wisconsin Just. Initiative, Inc. v. WEC***, 2023 WI 38, ¶20, 407 Wis. 2d 87, 990 N.W.2d 122 ("We do not ignore or fail to interpret statutes to mean what they say when critics are loud. We have repeatedly said it is not our job to judge the wisdom of the laws we interpret; rather, it is our job to interpret the law as we find it.") Neither is it our role to "determine the wisdom or rationale underpinning a particular

---

[14] The dissent, at ¶78, criticizes the majority for "focus[ing] on the purported purpose of Act 369's changes to these statutes rather than the text of the statutes themselves." To the contrary, the majority simply sets forth the facts and background prior to conducting its statutory interpretation.

legislative pronouncement." *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849. The judiciary is to stay within its own lane.

¶31 "Generally, language is given its common, ordinary, and accepted meaning." *Orion Flight Servs.*, 290 Wis. 2d 421, ¶16. That "language is interpreted in the context in which it is used, in relation to the language of surrounding or closely-related statutes, and interpreted to avoid absurd or unreasonable results." *Id.* In the course of our plain-meaning interpretation, we may also consider a statute's "scope, context, and purpose" so long as they "are ascertainable from the text and structure of the statute itself." *Kalal*, 271 Wis. 2d 633, ¶48. This is because the statute has to be read as a whole; we cannot disregard context and syntax. As well, we may look to statutory history to ascertain a statute's plain meaning. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581; *State v. Cox*, 2018 WI 67, ¶10, 382 Wis. 2d 338, 913 N.W.2d 780. This court, however, may not read limiting language into a statute when it is not so included. *State v. Lopez*, 2019 WI 101, ¶21, 389 Wis. 2d 156, 936 N.W.2d 125. And, "[i]f the meaning is plain, we ordinarily stop the inquiry." *Orion Flight Servs.*, 290 Wis. 2d 421, ¶17 (quoting *Reed*, 280 Wis. 2d 68, ¶13). It is with this established framework of statutory interpretation that we consider the new statute.

¶32 The recently amended WIS. STAT. § 165.10 is short and precise: "The attorney general shall deposit all settlement funds into the general fund." Our review must take into account the language of both the relevant statute and the surrounding or closely-related statutes. *See Kalal*, 271 Wis. 2d 633, ¶46.

17

Beginning with the language itself, "all settlement funds"[15] received by the Attorney General "shall" be deposited as directed by the legislature. When a statute dictates that an action "shall" be taken, we interpret that as a mandate. *Cox*, 382 Wis. 2d 338, ¶¶11, 16 (holding that "shall" is presumed to mean "must"); *Bank of N.Y. Mellon v. Carson*, 2015 WI 15, ¶21, 361 Wis. 2d 23, 859 N.W.2d 422 ("Generally, the word "shall" is presumed mandatory when it appears in a statute." (quoting *Karow v. Milwaukee Cnty. Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978))).

¶33 The statutory language plainly states that these "settlement funds" must be deposited into the "general fund." The issue then is what constitutes the "general fund." Two previously enacted statutes provide the Legislature's definition and show that, without question, the general fund is part of the State's treasury. WISCONSIN STAT. § 25.20 defines "[g]eneral fund" as "[a]ll moneys in the state treasury not *specifically designated* in any statute as belonging to any other funds." (Emphasis added). WISCONSIN STAT. § 20.906(1) states that "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general fund *unless* otherwise specifically provided by law." (Emphasis added).

¶34 When these three statutes are read together, it is plain that, prior to the Act, the Legislature had already enacted a law that—*absent* a specific designation or specific law to the contrary—placed all deposited money into the

---

[15] The settlement funds at issue in this appeal have already been defined. Those portions designated for third parties (including restitution) are not at issue, and this opinion does not cover those funds.

general purpose revenue fund of the general fund.[16]   And there are no laws directing with more specificity where DOJ settlement funds shall be deposited. The newly amended WIS. STAT. § 165.10 states that the settlement funds shall be deposited in the general fund—not in a "gifts, grants, and proceeds" account or any other specified account.   That leads inexorably to the conclusion that the Attorney General is operating contrary to law when settlement funds are deposited anywhere other than in the general purpose revenue fund.   The Attorney General may not continue depositing settlement funds into either the WIS. STAT. § 20.455(3)(g) gifts, grants, and proceeds account or into the § 20.455(1)(gh) account or into any other account.   The plain language of these statutory provisions leave no other option.

¶35    Contrary to the Attorney General's contentions, it is not necessary that WIS. STAT. § 165.10 state that settlement funds shall be deposited in the "general purpose revenue fund."   The plain reading of WIS. STAT. § 25.20 and WIS. STAT. § 20.906(1) establishes that, because the legislature has not specifically

---

[16] The dissent asserts that WIS. STAT. §§ 20.455(1)(gh) and (3)(g) "are laws that 'otherwise specifically provide[]' for the crediting of some settlement funds to Department of Justice appropriations created under those provisions." Dissent, ¶¶58, 69 (alteration in original). Accordingly, the dissent contends that "[s]uch funds would not, therefore, be credited to the general purpose revenues." *Id.*, ¶58.   The dissent fails to appreciate the fact that the statute at issue in this appeal was enacted later in time.  Thus, both the later-enacted-statute canon and the general/specific canon of statutory interpretation lead to the inescapable conclusion that the DOJ's program-revenue appropriations, as to the depositing of settlement funds, is superseded by the plain language and direct instruction set forth in WIS. STAT. §§ 165.10 and 20.906.   *See Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶37, 302 Wis. 2d 358, 735 N.W.2d 30 ("[W]here a general statute and a specific statute apply to the same subject, the specific statute controls."); *Townsend v. ChartSwap, LLC*, 2021 WI 86, ¶26, 399 Wis. 2d 599, 967 N.W.2d 21. To the extent the dissent asserts that these canons are inapplicable based on a perceived distinction between deposits and credits, we note that the title of § 20.906 is "Receipts and deposits of money."   While a statute's title is not part of the statute, it is part of a statute's context, approved by the legislature, and helpful in interpretation. *State v. Lopez*, 2019 WI 101, ¶¶26-27, 389 Wis. 2d 156, 936 N.W.2d 125.

designated any fund account *other* than the general fund, all settlement funds *must* be deposited into the general purpose revenue fund.[17]

¶36    The prior incarnation of WIS. STAT. § 165.10 provides further support for the Legislature's position. *See **Richards***, 309 Wis. 2d 541, ¶22; ***Cox***, 382 Wis. 2d 338, ¶10. Previously, the attorney general was permitted to expend settlement funds that were "committed under the terms of the settlement." *See* 2017 Wis. Act 59, § 1672G. Thus, the attorney general was free to deposit "committed" settlement funds into the WIS. STAT. § 20.455(3)(g) gifts, grants, and proceeds account, the § 20.455(1)(gh) account, or any other legally allowable account. He was permitted to expend such funds at his sole discretion. But before any "uncommitted" settlement funds could be expended by the attorney general, he needed Joint Finance Committee approval. *See* 2017 Wis. Act 59, § 1672G. Thus, there was a distinction between which settlement funds remained under the legislature's direct control and which did not. The new § 165.10 eliminated that distinction and now directs that "all" settlement funds "shall" be deposited as directed by the legislature into accounts over which it maintains its power of the purse regardless of whether they are otherwise committed in any settlement document. This court notes that "legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." ***James v. Heinrich***, 2021 WI 58, ¶26, 397 Wis. 2d 517, 960 N.W.2d 350 (quoting ***Kalal***, 271 Wis. 2d 633, ¶51). Moreover, "'statutory history' may also be used as part of 'plain meaning

---

[17] The Attorney General's arguments that this common-sense interpretation somehow means that the Legislature will exercise authority over funds that are specifically earmarked for other parties (including restitution, victim fees, and attorneys fees) is an absurd and unreasonable reading of the two statutes. Clearly, those earmarked funds are "otherwise specifically provided by law" and, as noted above, are not within the scope of this appeal.

analysis.'" **Heinrich**, 397 Wis. 2d 517, ¶26 (quoting **Richards,** 309 Wis. 2d 541, ¶22). In this case, both the legislative and statutory history confirm that the legislature enacted the new statute to alter the prior practices of the attorney general and to expressly bolster its monetary control over state funds.

¶37   Other sections within the Act support this interpretation restricting the past practice of depositing uncommitted settlement funds into accounts over which he has sole discretion. Section 21 of the Act prohibits the attorney general from spending any settlement funds previously deposited in the WIS. STAT. § 20.455(3)(g) gifts, grants, and proceeds account. Section 103 of the Act lapsed all unencumbered settlement funds from that account into the general fund. These statutes confirm/support our interpretation that the legislature's purpose in enacting WIS. STAT. § 165.10 was to re-establish its core authority over the State's treasury.

¶38   Finally, the circuit court's interpretation, if accepted, would result in a nullification of Section 27 of the Act, making it mere surplusage. *See **Kalal***, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."); **Belding v. Demoulin**, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373 ("Statutory provisions dealing with the same matter should be read in harmony such that each has force and effect."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 174-79 (2012) ("[A statute] should [not] needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). The court accepted the narrow reading espoused by the Attorney General that would result in no changes whatsoever, despite the new law enacted precisely to stop prior practices. That court held, because the WIS. STAT. § 20.455(3)(g) gifts, grants, and proceeds account fell *within* the general

fund under WIS. STAT. § 20.001(2)(a)-(c) and WIS. STAT. § 25.20, that was good enough. Even though WIS. STAT. § 20.906(1) is closely related to the new WIS. STAT. § 165.10, the court's ruling did not give any effect whatsoever to the new statute.

¶39 In other words, the circuit court concluded that the new statute did nothing and changed nothing. That is the very definition of frustrating legislative intent. *See State v. Wachsmuth*, 73 Wis. 2d 318, 330, 243 N.W.2d 410 (1976) (noting that rules should not be read to "require a narrow technical meaning be given words in question in such blatant disregard of their context as to frustrate the obvious intent of the legislature"); *see also United States v. Corbett*, 215 U.S. 233, 241 (1909) (courts are to avoid doing "violence" to the texts of statutes or making holdings that are in "conflict" with a statute's context because that "would, besides, frustrate the plain purpose which the section as a whole was intended to accomplish"). It is unreasonable for a court to determine that a new statute has absolutely no effect.[18]

---

[18] The circuit court also erred when it concluded that less-specific statutes took precedence over the newly enacted WIS. STAT. § 165.10. We have long held that "[i]n the event of 'a conflict between a general and a specific statute, the latter controls.'" *See Belding v. Demoulin*, 2014 WI 8, ¶17, 352 Wis. 2d 359, 843 N.W.2d 373 (quoting *Emjay Inv. Co. v. Village of Germantown*, 2011 WI 31, ¶38, 333 Wis. 2d 252, 797 N.W.2d 844); *Rouse*, 302 Wis. 2d 358, ¶37, ("[W]here a general statute and a specific statute apply to the same subject, the specific statute controls."). "[T]his is especially true where the specific statute is enacted after the general statute." *Clean Wis., Inc. v. Public Serv. Comm'n of Wis.*, 2005 WI 93, ¶175, 282 Wis. 2d 250, 700 N.W.2d 768; *Martineau v. State Conservation Comm'n*, 46 Wis. 2d 443, 449, 175 N.W.2d 206 (1970).

As relevant to this appeal, WIS. STAT. § 165.10 was enacted after WIS. STAT. § 20.455(1)(gh), which appropriated to the Attorney General "[m]oneys received under [various civil enforcement provisions], for the expenses of investigation and prosecution of violations, including attorneys fees." The amended § 165.10 covers settlement funds—not attorneys fees or general proceeds—so it, as the newly enacted and more specific statute, supersedes the more general § 20.455(1)(gh).

¶40   Not only is there overwhelming evidence that the circuit court erred in its summary judgment order, but a review of other statutes indicates that when the legislature wanted to specify the appropriation account to which certain funds deposited into the general fund were to be credited, it expressly stated so.[19] *See Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶36, 341 Wis. 2d 607, 815 N.W.2d 367 ("[I]f the legislature had intended to accomplish what a party is urging on the court ... the legislature knew how to draft that language and could have done so had it wished."); *see also Rodriguez v. United States*, 480 U.S. 522, 525 (1987) ("[W]here [the Legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983); first alteration in original)).   The lack of a mention of WIS. STAT. § 20.455(1)(gh) or other accounts where the funds should be credited, is, accordingly, very telling. There is no triggering language to allow separate crediting of these funds.   The plain implication is that the prior practice of crediting settlement fund deposits to other appropriation accounts is no longer legally tenable.   The Legislature is entitled to a revised declaration to that effect.

---

[19] *See* WIS. STAT. § 23.0917(5m)(b)2 ("All proceeds ... shall be deposited in the general fund and credited to the appropriation account under s. 20.370(7)(ag)."); WIS. STAT. § 23.293(4) ("These moneys shall be deposited in the general fund and credited to the appropriation under s. 20.370(7)(gg)."); WIS. STAT. § 23.425(2m) ("The fees collected … shall be deposited in the general fund and credited to the appropriation under s. 20.370(1)(gb)."); WIS. STAT. § 25.40(1)(a)4m. ("Moneys received ... that are deposited in the general fund and credited to the appropriation account under s. 20.395(3)(jh)."); WIS. STAT. § 48.275(2)(d)1. ("Payments transmitted ... shall be deposited in the general fund and credited to the appropriation account under s. 20.550(1)(L)."); WIS. STAT. § 84.01(36)(d)1. ("[A]ll fees received under this subsection shall be deposited in the general fund and credited to the appropriation account under s. 20.395(3)(eg)."); WIS. STAT. § 348.26(2) ("All moneys received from fees imposed by the department under this subsection shall be deposited in the general fund and credited to the appropriation account under s. 20.395(5)(dg).").

### III. Filing a complaint and consent decree is prosecuting an action, and is subject to legislative approval.

¶41 The cross-appeal likewise focuses upon the definition of statutory terms. WISCONSIN STAT. § 165.08(1) provides that "[a]ny civil action prosecuted by the [D]epartment [of Justice] ... may be compromised or discontinued" with the approval of the Joint Finance Committee. The Attorney General contends that even though a civil lawsuit is filed, there is no prosecution of a civil action when it is simultaneously accompanied by a proposed consent decree.[20] He asserts that these "open-and-shut" actions are merely the culmination of pre-suit negotiations and do not implicate § 165.08(1); there is no prosecution or compromise of a civil action, and it is only the civil enforcement violation that has been settled or compromised. Merely requiring a court to "sign-off" on the agreement, he continues, does not mean that the action has been prosecuted.

¶42 The Legislature vigorously disputes this—in its view—contorted reading of the statute and restrictive definition of "prosecution." It argues that there actually is litigation in a civil action that has been initiated (by the filing of the complaint), prosecuted (by the request for a judicial order), and compromised or settled (by the court's consent decree order). After the civil action is initiated, after it has been prosecuted, and after it has been compromised by the consent decree, the Legislature asserts that the circuit court terminates or discontinues the civil action by either executing the consent decree order as proposed or by requesting a hearing and/or more information on the agreement. That, it contends, falls plainly within WIS. STAT. § 165.08(1)'s parameters.

---

[20] All parties agree that "out-of-court settlements" are not within the ambit of this statute. Those are DOJ pre-suit resolutions that are never filed with any court, but rather are simply resolved by signed stipulation or documentation. They are not affected by this opinion.

¶43 After careful consideration of the statute's plain language and multiple dictionary definitions, the circuit court agreed with the Legislature. In its determination, the Attorney General's actions constitute prosecuting a civil action as opposed to merely engaging in pre-suit negotiations with a pro forma judicial stamp:

> One of the issues with that is if we're looking at prosecuted, what -- how much has to occur between beginning and an end?
>
> And this has been brought up by this Court; not to mention, the Court is aware that just because there's negotiations, which go to the Court to sign as a consent decree, it doesn't become the order of the Court and end that civil action until the Court signs off and okays that agreement. That officially ends the compromise, discontinues the action. The filing begins it, the consent decree ends it, terminates it, discontinues it. Or in other words, those words combine and then it takes the action of the court to begin and end the litigation.

¶44 Several terms must be interpreted. Key among them is "civil action" and "prosecute." Again, this Court utilizes the method for statutory interpretation set forth in *Kalal*: we "begin[] with the language of the statute," and if that language is clear, if it is "plain" as understood by "its common, ordinary, and accepted meaning," our inquiry stops. 271 Wis. 2d 633, ¶45.

¶45 We must first determine what constitutes a "civil action." This is a specific term of art that has a well understood meaning. "Under the statutes of this state, actions are of two kinds—civil and criminal." *City of Milwaukee v. Burns*, 225 Wis. 296, 299, 274 N.W. 273 (1937). "A criminal action is defined as one prosecuted by the state against a person charged with a public offense, for the punishment thereof. Every other action is a civil action." *Id.* According to BLACK'S LAW DICTIONARY (12th ed. 2024), a "civil action" is "[a]n action

25

brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." Here, there can be no dispute that the conduct at issue relates to civil actions.

¶46 "A civil action in which a personal judgment is sought is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made upon the defendant under this chapter within 90 days after filing." WIS. STAT. § 801.02(1); *see also* WIS. STAT. § 893.02 ("[A]n action is commenced, within the meaning of any provision of law which limits the time for the commencement of an action, as to each defendant, when the summons naming the defendant and the complaint are filed with the court ...."); *Hester v. Williams*, 117 Wis. 2d 634, 639, 345 N.W.2d 426 (1984) ("[I]t is clear that an action seeking a personal judgment is commenced at the moment the summons and complaint are filed with the court ...."); *see also* FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."). The Attorney General concedes, as he must, that summons and complaints are filed with a court to start the consent decree process and that, thus, a civil action "arises." He contends, however, that there is no "prosecution" of that civil action when all that is sought is a stipulated consent judgment.

¶47 No Wisconsin case expressly defines what it means to "prosecute" a civil action, but our supreme court in *Weinert v. First State Bank of West Bend*, 18 Wis. 2d 33, 36-37, 117 N.W.2d 685 (1962), implies that it involves "conducting the litigation." We may look to dictionaries for a closer examination of the definition of "prosecute" in this context. *See DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶46, 299 Wis. 2d 561, 729 N.W.2d 396 ("[W]e resort to dictionary definitions in discerning legislative intent when the legislature has

not provided a definition.") According to BLACK'S LAW DICTIONARY (12TH ED. 2024), "prosecute" means "[t]o commence and carry out (a legal action)." Similarly, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993) defines "prosecute" as "to institute legal proceedings against." Numerous other dictionary definitions across the board establish the concept that to "prosecute" a civil action means to institute, initiate, proceed, engage in, conduct and/or carry on a civil action.[21]

¶48    By filing a civil complaint to start a civil action in a court of law and then resolving that civil action based upon a judicially-approved consent decree, the Attorney General has clearly conducted, carried on, and engaged in a civil action. He has, as the circuit court correctly held, plainly "prosecuted" and then, by filing the proposed consent decree, compromised[22] that civil action.

¶49    Cases dismissed on failure-to-prosecute grounds also support the conclusion that filing a complaint, even with a proposed consent decree, qualifies as prosecuting a civil action. In such cases, a court will dismiss a civil action where the plaintiff does not meet his "burden of moving forward in a reasonable manner with prosecution" after commencing that prosecution by filing a

---

[21] *See, e.g.*, *Prosecute*, BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 723 (3d ed. 2011) ("to begin a case at law for punishment of a crime or of a legal violation"); *Prosecute*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 937 (10th ed. 1997) ("to bring legal action against for redress or punishment of a … violation of law" or "to institute legal proceedings …").

[22] The term "compromise," which the parties do not dispute, has been defined as "[a]n agreement between two or more persons to settle matters in dispute between them" or "an agreement for the settlement of a real or supposed claim in which each party surrenders something in concession to the other." *Compromise*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Compromise*, BRYAN A. GARNER, A DICTIONARY OF LEGAL USAGE 188 (3d ed. 2011) ("to agree to settle a matter …").

complaint. *See, e.g.*, ***Marshall-Wisconsin Co., Inc. v. Juneau Square Corp.***, 139 Wis. 2d 112, 134, 406 N.W.2d 764 (1987); *see also* ***Theis v. Short***, 2010 WI App 108, ¶12, 328 Wis. 2d 162, 789 N.W.2d 585. Accordingly, if a civil action may be dismissed for failure to prosecute when a party does nothing other than initiate the action, there must be "prosecution" of the civil action if the plaintiff takes some action—including seeking a signed final judgment.

¶50 The plain words of WIS. STAT. § 165.08(1) lead to one conclusion: when a party files a lawsuit in court—regardless of whether it seeks immediate judicial action by the court that will conclude the matter—the party has commenced and begun to prosecute that civil action. The Attorney General would have this court believe that any proposed consent decree he decides to file is automatically sacrosanct and that the state circuit or federal district court is his agent who is duty-bound to just sign the decree and provide the Attorney General with that legal imprimatur to commence contempt proceedings if the other party fails to comply with the terms of the decree order. In other words, the Attorney General is asserting that courts have no independent authority or powers in these situations, and thus there is no "meaningful prosecution" that is undertaken by submitting causes of action to the court.

¶51 But courts are not rubber stamps, and the Attorney General's disregard for the third branch of government is, to say the least, contrary to our founding principles. *See* ***Gabler***, 376 Wis. 2d 147, ¶3 (separation of powers is the bedrock of our democracy); ***SEIU***, 393 Wis. 2d 38, ¶31. Even a proposed consent decree requires a court to establish whether there are sufficient causes of action alleged over which that court has jurisdiction. *See* WIS. STAT. §§ 801.04; 801.05. That court must also determine whether the proposed consent decree is valid, sufficient under the law, and not contrary to public policy. *See* ***Rosecky v.***

*Schissel*, 2013 WI 66, ¶68, 349 Wis. 2d 84, 833 N.W.2d 634.  All of these deliberations require judicial interpretation and action.  Placing a matter before a court and seeking judicial relief cannot be anything other than prosecuting a civil action.

¶52    Finally, the Attorney General's contention that the statutory approval process would add unacceptable time to the prosecution of civil actions that the Attorney General seeks to compromise is simply not borne out by the facts.  Courts are not tasked with determining if a statute reflects the best public policy.  *State ex rel. Vanko v. Kahl*, 52 Wis. 2d 206, 216, 188 N.W.2d 460 (1971).  "We do not even need to find it to be good public policy."  *Id.*  Simply, "[j]udicial deference to policy choices enacted into law by the legislature requires statutory interpretation focus primarily on the language of the statute."  *Kalal*, 271 Wis. 2d 633, ¶44.  Courts "assume that the legislature's intent is expressed in the statutory language."  *Id.*  This is because "[p]ublic policy is for the legislature to establish, with courts not expected nor permitted to substitute their reaction to the alternatives available for the conclusion reached by the legislative branch of government."  *Vanko*, 52 Wis. 2d at 216.  Moreover, the parties concede that, when called upon to act in the past, the Joint Finance Committee has acted with alacrity and has promptly considered Attorney General expenditure plans and just as promptly provided approval.  Even if that were not the case, there is no evidence that, if a matter required expedited attention, it would linger in committee.

¶53    In essence, the approval of the Joint Finance Committee is a condition precedent to settlement similar to those found in many areas of law.[23] Approval could even be sought prior to the filing of a civil action and expressly noted as having been provided in the allegations of a complaint. Approval might also be sought after a complaint is filed but prior to the court's signing of a proposed consent decree. Regardless, the Attorney General's timing argument is irrelevant to the interpretation of the statute.

¶54    The Attorney General's arguments notwithstanding, even a compromise of a civil enforcement violation that results in a consent decree being filed in circuit or district court along with a complaint is a civil action that has been prosecuted and then compromised. It falls within the parameters of WIS. STAT. § 165.08.

## CONCLUSION

¶55    We conclude that the Legislature and Jarchow have standing to commence and prosecute this action. The circuit court's ruling to that effect is affirmed. We further conclude that the plain language of the newly enacted WIS. STAT. § 165.10, when read in conjunction with related statutes (including WIS. STAT. § 20.906(1)) has altered past practices and requires that "all settlement

---

[23] *Anderson v. Aul*, 2015 WI 19, ¶66, 361 Wis. 2d 63, 862 N.W.2d 304 ("A condition precedent is an event that must occur before performance under a contract becomes due."); *Locke v. Bort*, 10 Wis. 2d 585, 588, 103 N.W.2d 555 (1960) ("The insertion of a condition precedent in a contract does not render the same void but only delays the enforcibility [sic] of the contract until the condition precedent has taken place."); *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 295, 588 N.W.2d 19 (1999) (A condition precedent limits "the time within which a certain prescribed act, necessary to the enforcement of [the plaintiff's] cause of action, shall be done." (alteration in original; quoting *Ocampo v. City of Racine*, 28 Wis. 2d 506, 509, 137 N.W.2d 477 (1965)).

funds" (as defined; not including those bound to third-parties) shall be deposited into the general fund. Because the legislature has not otherwise specifically provided by law separate accounts or designations, we hold that such settlement funds shall be deposited into the general purpose revenues of the general fund. Accordingly, the circuit court's order with respect to § 165.10 is reversed, and the matter is remanded for a declaratory judgment consistent with this opinion.

¶56 Finally, this court concludes that prosecution of a civil action includes the simultaneous filing of a complaint and a proposed consent decree. Therefore, the provisions of WIS. STAT. § 165.08 require, as a condition precedent to settlement, that the Attorney General obtain approval of the Joint Finance Committee for civil enforcement negotiations that the Department of Justice decides to file in civil court seeking judicially signed consent decrees. Thus, the circuit court's ruling with respect to this statute is affirmed.

*By the Court.*—Order reversed in part, affirmed in part and cause remanded with directions; cross-appeal affirmed.

Recommended for publication in the official reports.

No.   2022AP431 (D)


¶57   NEUBAUER, J. (*dissenting*). The majority concludes that WIS. STAT. §§ 165.10 and 20.906(1) (2021-22)[1] require the attorney general to deposit proceeds from the settlement of civil actions the Department of Justice prosecutes "into the general purpose revenues of the general fund" because the legislature has not designated other places into which such funds may be placed. Majority, ¶55. I respectfully dissent because in reaching that conclusion, the majority violates two cardinal rules of statutory interpretation.[2]

¶58   First, the majority ignores the plain language of WIS. STAT. §§ 165.10 and 20.906(1), which require the attorney general to deposit funds received in settlements of civil enforcement actions into the general fund and, if provided by law, permits crediting some of those funds to Department of Justice appropriations under WIS. STAT. § 20.455. Specifically, the majority fails to give effect to the final clause in § 20.906(1), which states that "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general fund *unless otherwise specifically provided by law*." **Id.** (emphasis added). The majority concludes that "the legislature has not otherwise specifically provided by law separate accounts or designations" for settlement funds, Majority, ¶55, but this ignores that § 20.455(1)(gh) and (3)(g) are laws that "otherwise specifically

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] I assume that the legislature, at a minimum, has standing to bring the claims for declaratory and injunctive relief at issue in this case.

provide[]" for the crediting of some settlement funds to Department of Justice appropriations created under those provisions. *See* § 20.906(1). Such funds would not, therefore, be credited to the general purpose revenues.

¶59 Ignoring the plain language of this statute, the majority instead prefaces its analysis with a description of what the legislature purportedly *intended* to accomplish in revising WIS. STAT. § 165.10 and several other statutes in 2017 Wis. Act 369 (Act 369), and then construes those statutes to reach that result. This sort of working backwards from a predetermined conclusion is antithetical to our statutory interpretation methodology. "It is the *law* that governs, not the intent of the lawgiver…. Men may intend what they will; but it is only the laws that they enact which bind us." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶52, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting ANTONIN SCALIA, A MATTER OF INTERPRETATION 17 (Princeton Univ. Press 1997)).

¶60 It may be, as the majority writes, that the legislature's purpose in revising WIS. STAT. § 165.10 and making other statutory changes in Act 369 was "to bring all settlement funds under legislative control" and "corral the attorney general's discretion with respect to the use of [those] funds." Majority, ¶¶12, 21. But if those changes to the statutes did not actually accomplish that desired result, that is a matter for the legislature to address, not this court. *See State ex rel. Badtke v. School Bd. of Joint Common Sch. Dist. No. 1*, 1 Wis. 2d 208, 213, 83 Wis. 2d 724 (1957) ("Modifications of [a] statute if it works badly or in unexpected and undesirable ways must be obtained through legislative, not judicial action."). Our task is simply to "interpret the words the legislature actually enacted into law." *State v. Neill*, 2020 WI 15, ¶23, 390 Wis. 2d 248, 938 N.W.2d 521 (citation omitted).

2

¶61    With respect to the attorney general's cross-appeal, I have elsewhere explained why WIS. STAT. § 165.08(1) is unconstitutional as applied to two categories of cases:  (1) civil actions brought under statutes that the Attorney General is charged with enforcing; and (2) civil actions brought by the Department of Justice on behalf of executive-branch agencies relating to the administration of the statutory programs they execute.  *See **Kaul v. Wisconsin State Legislature***, No. 2022AP790, slip op. recommended for publication (WI App Dec. 2, 2024).  In light of that conclusion, and the attorney general's concession that this case involves only civil enforcement actions, I would dismiss the cross-appeal as moot.

## I.

¶62    The two statutes at the heart of the legislature's appeal pertain to the handling of funds the Department of Justice receives in connection with the settlement of litigation.  WISCONSIN STAT. § 165.10 directs the attorney general to "deposit all settlement funds into the general fund."  The other statute, WIS. STAT. § 20.906(1), states that "[a]ll moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law."  To understand and properly interpret these statutes, some background in Wisconsin's budgeting and appropriations statutes is helpful.

¶63    WISCONSIN STAT. § 165.10 refers to the "general fund," which consists of "[a]ll moneys in the state treasury not specifically designated in any statute as belonging to any other funds."  WIS. STAT. § 25.20.  Within the general fund sit three types of revenue.  *See* WIS. STAT. § 20.001(2)(a)-(c).  Two are relevant here.  The first is "[g]eneral purpose revenues," which "consist of general taxes, miscellaneous receipts and revenues collected by state agencies which are paid into a specific fund, lose their identity, and are then available for

3

appropriation by the legislature." Sec. 20.001(2)(a). The second relevant category is "[p]rogram revenues," "which are paid into the general fund and are credited by law to an appropriation to finance a specified program or state agency." Sec. 20.001(2)(b). As is evident from these statutory definitions, the legislature has discretion to appropriate general purpose revenues as it sees fit. But it does not have such discretion with respect to program revenues because it has already enacted laws allocating them to fund specific programs or agencies.[3]

¶64 The legislature has created program-revenue appropriations for the Department of Justice that are codified in WIS. STAT. § 20.455. The department credits funds it receives to several of these appropriations. For example, § 20.455(1)(gs) creates an appropriation for "expenses related to the collection of delinquent obligations" in bankruptcy cases. Section 20.455(1)(hm) creates an appropriation for "moneys received by the department to provide restitution to victims" in certain civil enforcement actions. Section 20.455(1)(gh) creates an appropriation for funds the department receives in actions brought under certain statutes "for the expenses of investigation and prosecution of violations, including attorney fees." And before Act 369 was passed, the department credited amounts received in certain settlements that were not committed for any specific purpose under the terms of the settlement to the appropriation in § 20.455(3)(g), which exists for "[a]ll moneys received from gifts and grants and all proceeds from services, conferences, and sales of publications and promotional materials."

---

[3] To regain plenary authority over funds that have been credited to an appropriation account, the legislature may pass a law causing those funds to lapse to the general fund. *See, e.g.*, WIS. STAT. § 20.435(5)(bc) (stating that funds for community programs that are "allocated but not encumbered by December 31 of each year lapse to the general fund on the next January 1 unless carried forward to the next calendar year by the joint committee on finance").

## II.

¶65 With this background in mind, I turn to the interpretation of WIS. STAT. §§ 165.10 and 20.906(1). When interpreting statutory language, our aim "is to determine what the statute means so that it may be given its full, proper, and intended effect." *Kalal*, 271 Wis. 2d 633, ¶44. To do so, we give the language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶45. We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. We also "interpret statutes to reasonably give effect to every word." *Jefferson v. Dane County*, 2020 WI 90, ¶21, 394 Wis. 2d 602, 951 N.W.2d 556.

¶66 WISCONSIN STAT. § 165.10 requires the attorney general to "deposit all settlement funds into the general fund." As is evident from the background discussed above, this statute does not, by itself, require that such funds be deposited into the general purpose revenues within the general fund. It simply directs those funds into the general fund. The Legislature argues that the statute also prohibits "further earmarking" of funds once they have been deposited into the general fund, but that supposed prohibition finds no support in the statutory text. Once the funds are received into the general fund, § 165.10 has nothing to say about whether they are credited to the general purpose revenues or a department appropriation. It neither requires the funds to be allocated to a particular appropriation nor prohibits them from being allocated to an appropriation.

¶67 At this point, the Legislature argues, the terms of WIS. STAT. § 20.906(1) kick in and require that funds received into the treasury "be credited to the general purpose revenues of the general fund." Together, it contends, § 20.906(1) and WIS. STAT. § 165.10 "operate[] to revoke the Attorney General's authority to deposit any settlement funds into" the appropriations created by WIS. STAT. § 20.455(1)(gh) and (3)(g).

¶68 In adopting the Legislature's proffered interpretation of the statutes, the majority fails to give effect to a key phrase at the end of WIS. STAT. § 20.906(1)—"unless otherwise specifically provided by law." This language limits the directive that funds paid into the treasury be credited to the general purpose revenues to those instances in which no law specifies a different crediting outcome.[4]

¶69 The majority asserts that "there are no laws directing with more specificity where [department] settlement funds shall be deposited." Majority, ¶34.[5] But this ignores the statutory appropriations for the Department of Justice that the legislature has already enacted, including as most relevant here WIS. STAT. § 20.455(1)(gh) and (3)(g). These program-revenue appropriation provisions are

---

[4] Significantly, the Legislature concedes that the phrase "all settlement funds" in WIS. STAT. § 165.10 does not really mean all funds that the attorney general receives from litigation settlements, but instead encompasses only those funds that the attorney general has authority to control because they are not otherwise required to be directed to third parties by constitutional or other statutory authorities. This concession further confirms that the phrase "unless otherwise specifically provided by law" in WIS. STAT. § 20.906(1) unambiguously provides for the crediting of settlement funds to the Department of Justice's statutory program revenue appropriations within the general fund.

[5] WISCONSIN STAT. § 20.906(1) does not require "more" specificity; it simply requires that a crediting direction other than the general purpose revenues be "specifically provided by law."

laws that, in the language of WIS. STAT. § 20.906(1), "otherwise specifically provide[]" crediting instructions for certain funds the Department of Justice receives in civil litigation settlements.

¶70 WISCONSIN STAT. § 20.455(1)(gh) creates an appropriation for "[m]oneys received" by the Department of Justice under certain consumer protection, environmental, and other civil enforcement statutes "for the expenses of investigation and prosecution of violations, including attorney fees." Each of the enforcement statutes listed in § 20.455(1)(gh) contains language mandating that amounts awarded by a court for investigation and prosecution expenses and attorney fees be credited to the appropriation account under § 20.455(1)(gh). *See, e.g.*, WIS. STAT. §§ 23.22(9)(c), 49.49(6), 133.16. Thus, if the Department of Justice settles a claim under one of these statutes, it must credit any amounts awarded for attorneys fees or other investigation and prosecution costs to the § 20.455(1)(gh) account.

¶71 The majority's interpretation of WIS. STAT. § 165.10, however, prohibits the attorney general from doing so. Majority, ¶34. The majority tells the attorney general that any funds awarded to the Department of Justice as investigation costs and attorneys fees must now be credited to the general purpose revenues.[6] This places the attorney general in an untenable position: either comply with today's decision or the crediting instructions in these statutes. We should endeavor to avoid construing statutes to create such conflict. *See, e.g.*, *Wyss v. Albee*, 193 Wis. 2d 101, 110, 532 N.W.2d 444 (1995) ("It is a cardinal

---

[6] The majority states that attorneys fees "earmarked for other parties" "are not within the scope of this appeal." Majority, ¶35 n.17. I do not understand this statement to apply to amounts awarded to the Department of Justice as costs of investigation or attorneys fees.

rule of statutory construction that conflicts between statutes are not favored and will be held not to exist if the statutes may otherwise be reasonably construed.").[7]

¶72    Similarly, WIS. STAT. § 20.455(3)(g) creates an appropriation account for "moneys received from gifts and grants and all proceeds from services, conferences, and sales of publications and promotional materials."  The attorney general argues that settlement funds are properly credited to this account as "proceeds" from legal "services" the Department of Justice provides when it represents the state in civil litigation.

¶73    Substantial support exists for this interpretation of the statutory language.  Though WIS. STAT. § 20.455(3)(g) does not specifically refer to funds or proceeds received from litigation settlements, the use of the word "proceeds" to describe funds received by a party pursuant to the settlement of a legal dispute is common in our statutes and case law.  *See, e.g.*, WIS. STAT. § 102.29(d) (referring to "distribution of the proceeds of the settlement"); WIS. STAT. § 165.12(b)-(c) (identifying payees of "settlement proceeds" in opioid litigation); WIS. STAT. § 779.80(2) (directing that hospital liens "shall attach to … the proceeds of any settlement"); *see also* **Sinkler v. American Fam. Mut. Ins. Co.**, 2019 WI App 64, ¶¶1-2, 7, 389 Wis. 2d 273, 936 N.W.2d 186.  In addition, both sides acknowledge that the attorney general credited funds not committed to another purpose by the

---

[7] The Legislature argues that the statutes listed in WIS. STAT. § 20.455(1)(gh) can be harmonized with WIS. STAT. § 165.10 because § 165.10 "controls as to *settlement funds*" whereas the statutes listed in § 20.455(1)(gh) "still apply in full force in any application that does not involve a settlement agreement," such as where a claim is litigated to a final judgment.  I am not convinced.  The statutes apply to amounts awarded by a court to the Department of Justice for costs of investigation and attorneys fees.  *See, e.g.*, WIS. STAT. §§ 133.16, 292.99(2).  In my view, such amounts can be awarded by a court when, for example, the terms of a settlement agreement are memorialized in a consent decree or judgment which is entered by a court.

terms of a settlement into the WIS. STAT. § 20.455(3)(g) account in the years before Act 369 was passed. Evidence in the record indicates the legislature was aware of this practice since at least 2010. Consistent with this historical practice, the pre-Act 369 version of WIS. STAT. § 165.10 specifically acknowledged that "settlement funds" had been credited to the WIS. STAT. § 20.455(3)(g) account and required the attorney general to submit a plan for the expenditure of those funds to the legislature's joint finance committee (JFC). 2017 Wis. Act 59, § 1672g.

¶74 The Legislature contends that its "full repeal" of this language in Act 369 eliminated any basis for continuing to credit funds to this account. I do not agree. The changes to WIS. STAT. §§ 165.10 and 20.455(3)(g) in Act 369 do not prohibit settlement funds from being credited to the § 20.455(3)(g) account. *See* 2017 Wis. Act 369, §§ 21, 27. With respect to § 165.10, Act 369 eliminated the requirement that the attorney general submit a plan for the expenditure of funds from the § 20.455(3)(g) account to the JFC and replaced it with the directive that the attorney general deposit all settlement funds into the general fund. 2017 Wis. Act 369, § 27. Act 369 implemented two changes with regard to WIS. STAT. § 20.455(3)(g). It amended the statute to limit the amount of money the attorney general could spend out of the account. 2017 Wis. Act 369, § 21. And it ordered a one-time lapse of unencumbered "settlement funds" in the account to the general fund. *Id.*, § 103(1). Notably, the legislature did not amend § 20.455(3)(g) to prohibit the attorney general from crediting funds received in civil settlements to that appropriation. Nor did it specify in the amendment to § 165.10 that settlement funds are now to be credited to the general purpose revenues in the general fund.

¶75 The majority contends that my reading of WIS. STAT. § 20.455(1)(gh) and (3)(g) falters because WIS. STAT. § 165.10, as the more recently enacted statute that specifically addresses settlement funds, supersedes

9

those appropriations statutes "as to the depositing of settlement funds." Majority, ¶34 n.16. I agree that § 165.10 addresses depositing, but that statute does not mean that § 20.455(1)(gh) and (3)(g) no longer have any role to play vis-à-vis settlement funds. "The rule of statutory construction that a more specific statute controls when there is a conflict with a more general statute applies only when there is truly a conflict." *Pritchard v. Madison Metro. Sch. Dist.*, 2001 WI App 62, ¶15, 242 Wis. 2d 301, 625 N.W.2d 613. Here, there is no conflict because there is a difference between *depositing* funds and *crediting* them. Section 165.10 addresses the depositing of settlement funds and provides that they are to be deposited into the general fund. WISCONSIN STAT. §§ 20.906(1) and 20.455 addressing crediting, not depositing. Section 20.906(1) provides that deposited funds are to "be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law" and Section 20.455(1)(gh) and (3)(g) are laws that specifically provide different crediting directions. Because the statutes address different budgetary actions and can reasonably be construed to avoid conflict, the general/specific canon of construction is simply inapplicable. *See Pritchard*, 242 Wis. 2d 301, ¶15 ("Conflicts between statutes are not favored, and courts are to harmonize statutes to avoid conflicts when a reasonable construction of the statutes permits that.").

¶76 The Legislature raises two additional arguments that merit brief mention. First, it contends that the attorney general's interpretation of Act 369's change to WIS. STAT. § 165.10 renders the change meaningless. By that it means that Act 369 would not change the attorney general's pre-Act 369 practice of crediting settlement funds to the WIS. STAT. § 20.455(1)(gh) and (3)(g) appropriations. But there is a difference between a statutory change that fails to accomplish a specific purpose and one that accomplishes nothing at all. Here, as

the attorney general notes, Act 369 eliminated the passive JFC review requirement applicable to uncommitted funds in the § 20.455(3)(g) account from § 165.10 and imposed a new limit on the attorney general's ability to spend money out of that appropriation. 2017 Wis. Act 369, §§ 21, 27. Though the language the legislature chose still allows the crediting of some settlement funds to the § 20.455(1)(gh) and (3)(g) appropriations, that does not render Act 369's amendment to § 165.10 surplusage.

¶77 Finally, the Legislature cites a number of statutes in our code that direct money to be deposited into the general fund and provide specific crediting instructions to a particular appropriation. As one example, WIS. STAT. § 23.293(4) states that contributions to the state's ice age trail program "shall be deposited in the general fund and credited to the appropriation under [WIS. STAT. §] 20.370(7)(gg)." The Legislature contrasts these statutes with the lack of similar crediting directions in WIS. STAT. § 165.10. I agree with the Legislature's point as far as it goes, but that is not far enough to reach its desired outcome. The crediting directions are contained in WIS. STAT. § 20.906(1) and, as explained above, permit continued crediting to the WIS. STAT. § 20.455(1)(gh) and (3)(g) appropriations.

## III.

¶78 In reaching a contrary conclusion, the majority focuses on the purported purpose of Act 369's changes to these statutes rather than the text of the statutes themselves. Before beginning its statutory analysis, the majority asserts that: (1) the revisions to WIS. STAT. § 165.10 "sought to reclaim the Legislature's exclusive constitutional authority to direct the spending of *all* settlement funds," Majority, ¶9; (2) the legislature intended in Act 369 "to corral the attorney general's discretion with respect to the use of settlement funds," Majority, ¶12;

(3) Act 369 was "expressly designed to bring all settlement funds under legislative control," Majority, ¶21; and (4) the legislature's "intent could not be more plain," *id.*, ¶22.

¶79     "[S]tatutory interpretation 'begins with the language of the statute,'" not declarations of legislative intent or purpose.  *See Kalal*, 271 Wis. 2d 633, ¶45 (quoting *Seider v. O'Connell*, 2000 WI 76, ¶31, 236 Wis. 2d 211, 612 N.W.2d 659).  Though "[w]e assume that the legislature's intent is expressed in the statutory language," *Kalal*, 271 Wis. 2d 633, ¶44, we are not at liberty to disregard the plain text or foist upon it an interpretation that its terms cannot support simply because we believe it accomplishes the legislature's intended purpose. Particularly here, where the statutes are not ambiguous, we "cannot, under guise of judicial statutory construction, rewrite [them] to reflect the intention the legislature might have had." *Harris v. Kelley*, 70 Wis. 2d 242, 250, 234 N.W.2d 628 (1975).

¶80     WISCONSIN STAT. § 165.10 directs the attorney general to deposit settlement funds into the general fund.  WISCONSIN STAT. § 20.906(1) provides that those funds will be credited to the general purpose revenues unless another law provides a different crediting direction.  WIS. STAT. §§ 20.455(1)(gh) and (3)(g) are laws that provide such direction.  To the extent this result is the product of imprecise word choice or other inadvertence on the legislature's part, "it is not our function to … correct such an oversight." *A. & A.P. v. Racine County*, 119 Wis. 2d 349, 354, 349 N.W.2d 743 (Ct. App. 1984).